## Petition of O'DONNELL et al.

## THE HUGH O'DONNELL.

District Court, S. D. New York. September 12, 1927.

Shipping ⊜207—Towing tug, sharing in proceeds of carriage, held "transporting" the cargoes, and not liable for loss through faults or errors of navigation (Harter Act, § 3 [46 USCA § 192]).

A tug, seaworthy and properly manned and equipped, engaged in towing loaded barges under an agreement between her owner and the owner of the barges, by which they shared the proceeds of the carriage, *held* to be "transporting" the cargoes, within the meaning of Harter Act, § 3 (46 USCA § 192 [Comp. St. § 8031]), and not liable for damage to cargo resulting from faults or errors of navigation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transport–Transportation.].

In Admiralty. Petition of Louis O'Donnell, Hugh O'Donnell, and James T. O'Donnell, doing business as the O'Donnell Towing & Transportation Company, owner of the steam tug Hugh O'Donnell, for limitation of liability; Spencer Kellogg & Sons, Inc., car-

go owner and damage claimant. Decree holding petitioners not liable.

Wm. F. Purdy, of New York City, for petitioners.

Forrest E. Single, of New York City, for libelants and claimant Spencer Kellogg & Sons, Inc.

THACHER, District Judge. On November 23, 1925, the tug Hugh O'Donnell, with five loaded canal barges, the M. A. Brennan, the Alfred E. Smith, and three others, left Waterford, N. Y., bound for New York City. In entering the federal lock at Troy, which is at the junction of the Barge Canal and the Hudson river, the Brennan and the Smith were brought into collision with the abutments of the lock, and serious damage resulted to these barges and their cargoes. The claims of the barge owners have been settled, and the only matters in controversy here relate to the claim of Spencer Kellogg & Sons, Inc., cargo owners, for cargo damage.

To this claim the petitioners assert several defenses, but it will be necessary to consider only one. Assuming, but not conceding, negligence of the tug, it is insisted that under the provisions of the Harter Act (46 USCA § 190 et seq. [Comp. St. §§ 8029–8035]) there can be no liability for cargo damage. Section 3 of the Harter Act (46 USCA § 192 [Comp. St. § 8031]) provides:

"Sec. 3. That if the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel.  *  *  * "

The five barges in the tow were owned by the Marine Transit Corporation, and were being towed pursuant to an agreement between that company and the petitioners, under which the petitioners agreed to do all the towing necessary in the operation of these barges; they to receive half the net profits of the business. Under this arrangement the transit company procured cargoes to be carried on its barges, and relied on the petitioners to furnish the services of a tug. Before the voyage in question the transit company agreed with the claimant, Spencer Kellogg & Sons, Inc., to carry from Buffalo, N. Y., to Edgewater, N. J., on its barges the M. A. Brennan and the Alfred E. Smith two cargoes of flaxseed, for which it issued its bills of lading. Pursuant to the agreement with the petitioners, the tug Hugh O'Donnell was employed to tow these barges.

The question which arises is whether under these circumstances the owners of the tug can claim exemption under section 3 of the Harter Act from liability for faults or errors in navigation after commencement of the voyage. There is uncontradicted proof that the tug was in all respects seaworthy and properly manned, equipped, and supplied when the voyage commenced in Buffalo. Under the decision of the Supreme Court in Sacramento Navigation Co. v. Milton H. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663, 1927 A. M. C. 397, the tug must be regarded as engaged in transporting the cargo carried on the barges, and entitled to the benefits of the statute, unless the fact of divided ownership as between the tug and her tow calls for a contrary ruling.

A reading of the decision and of the statute affords no basis for such a distinction. The exemption is extended to the "vessel, her owner or owners, agent or charterers" if the vessel is engaged in "transporting merchandise or property." The Hugh O'Donnell was not engaged on a towage contract. Under the agreement of her owners she was engaged with the transit company in the joint performance of a contract for the transportation of merchandise, in the performance of which the transit company and her owners were equally interested as carriers. If the tug had been engaged on a contract of towage pure and simple, perhaps it could be said that, having no interest in the transportation of the freight, she was not engaged in "transporting merchandise or property," within the meaning of the statute. But that question does not arise here. In view of the arrangement under which the transit company and the petitioners engaged in the business of carrying freight for their joint account, I see no escape from the conclusion that, under the reasoning in the Salz Case, supra, the tug was engaged in transporting the flaxseed carried on the barges, and, being so engaged, that she and her owners were entitled to the exemption afforded by the statute.

Settle decree accordingly.